NOTICE

Decision filed 08/05/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 260409-U

NO. 5-26-0409

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jefferson County. |
| | ) | |
| v. | ) | No. 26-CF-147 |
| | ) | |
| SARAH M. DELATORE, | ) | Honorable |
| | ) | Jerry E. Crisel, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CLARKE delivered the judgment of the court.
Justices McHaney and Bollinger concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The trial court's orders granting the State's verified petition to deny pretrial release and denying the defendant's motion for relief due to a real and present threat are affirmed. The trial court's finding of willful flight was in error and is vacated.

¶ 2     The defendant, Sarah M. Delatore, appeals the April 30, 2026, order from the Jefferson County trial court that granted the State's petition to deny pretrial release and the May 6, 2026, denial of her motion for relief and immediate release. For the following reasons, we affirm in part and vacate in part.

¶ 3                              I. BACKGROUND

¶ 4     On April 29, 2026, the defendant was charged with one count of unlawful violation of an order of protection, a Class 4 felony. 720 ILCS 5/12-3.4 (West 2024). The State filed a verified petition to deny the defendant pretrial release the same day, alleging that the defendant was charged

1

with violating an order of protection and that her pretrial release posed a real and present threat to the safety of any person or persons or the community. 725 ILCS 5/110-6.1(a)(3) (West 2024).

¶ 5     The matter proceeded to a hearing on April 30, 2026. At the beginning of the hearing, defense counsel expressed a *bona fide* doubt as to the defendant's fitness to stand trial, stating that "one has already been declared in Marion County." The trial court found that there was a *bona fide* doubt as to the defendant's fitness and ordered an evaluation. The State then proceeded by proffer, stating that on April 27, 2026, the defendant made contact with her son, Brody G., a protected party, who was 16 years old. Brody was a protected party in an order of protection (OP) filed on October 18, 2024, which was in effect for two years until October 18, 2026. The OP was filed in a divorce case between the defendant and Brody's father, Jesse G. The underlying OP indicated that there were "numerous incidents of harassment" that led to the OP, including concealing Brody from Jesse. The trial court took judicial notice of the OP.

¶ 6     On April 27, 2026, Deputy Craig McDaniels responded to a report of a violation of an OP from Jesse on Brody's behalf. According to Jesse, the defendant walked by a residence where Brody was playing with some other children in the yard. When the children observed the defendant, they ran inside the home because the defendant began walking onto the property towards them. Later in the evening, the defendant was a passenger in a truck that drove by the residence when Brody was again in the yard. The defendant yelled at Brody, and he said this was unwanted contact and asked the defendant to leave him alone. The defendant admitted that she drove by the residence.

¶ 7     The defendant had two prior convictions for violation of an OP, and she was on conditional discharge on those offenses. She was also on conditional discharge for a retail theft misdemeanor. The defendant had a pending charge in Marion County for criminal damage to property, and there

2

was an active arrest warrant for her failure to appear in that case. The State said, "[E]ven though we have not alleged flight risk, Judge, I think that's [*sic*] indications she may not appear for the charges in this court." The State asked for the defendant to be detained to protect Brody.

¶ 8 Defense counsel proffered that the defendant was 43 years old and lived in Albion, Illinois, with her husband, Josh Clark. She had bachelor's degrees in nursing and accounting. She does not live in Jefferson County and was visiting some friends and family. Her brother lived in Jefferson County. She was employed as a full-time energy advisor for Leidos Engineering and worked remotely. The defendant reported that she did not have a record of failure to appear for court hearings, despite the pretrial report stating that she had three or four failures to appear. She was on conditional release at the time of the offense, but not on bond, pretrial release, or parole. The defendant denied all charges and defense counsel stated that there "were no injuries here," and argued that the defendant was not a danger to any person or persons or the community. Defense counsel asked for the defendant's release, requesting home confinement with electronic monitoring and stating that she could reside in Jefferson County where she was visiting if necessary.

¶ 9 The State responded, asserting that the defendant was on bond out of Marion County on a 2022 case, despite defense counsel's proffer. The defendant resided in Albion, so there was no need for her "to be driving by the protected residence and making contact with the protected parties if that's where she lives." The OP was originally entered because of "numerous incidents of harassment of the child." The defendant was recently placed on conditional discharge for separate violations of OPs against her mother. The State argued that the defendant did not abide by court orders and that no conditions could be imposed to prevent her from violating any type of pretrial release conditions or OPs.

¶ 10 The trial court stated that in the defendant's favor, she had no felony convictions, had ties to the area, was employed, and was educated. However, the defendant had an outstanding failure to appear warrant and was on bond, both in cases out of Marion County. She was on conditional discharge in two other cases for violating OPs, placing her in "violation of at least two court orders." Addressing the defendant, the trial court said, "[T]hat doesn't give me a lot of faith for your appearing in court, and not *** further violating the law." The trial court also stated that there was a doubt as to the defendant's mental fitness to stand trial, and she would need to be evaluated by a psychiatrist. The trial court stated, "So I think the Court is going to make the finding that you are a clear and present possible threat to the individuals protected by this Order of Protection and the public in general, and I don't believe there's any condition or combination of conditions that would assure that you would abide by the Court's orders." The trial court entered a written order, finding by clear and convincing evidence that the proof was evident or the presumption great that the defendant committed a qualifying offense, that she posed a real and present threat to the safety of any person or persons or the community, and that no condition or combination of conditions could mitigate the real and present threat. Further, the trial court found that the defendant posed a real and present threat of willful flight, and no condition or combination of conditions could mitigate the threat of the defendant's willful flight.

¶ 11 Defense counsel filed a motion for relief and immediate release on the same day. The motion for relief stated that the trial court erred in granting the State's petition to deny pretrial release in that the trial court failed to fully consider the defendant's ties to the community, her willingness to abide by any terms of pretrial release, her employment opportunities, that no weapon was used in the commission of the offense, and that no one was injured in the offense.

4

¶ 12   The matter proceeded to a hearing on May 6, 2026. Defense counsel provided the same factual proffer as at the initial detention hearing, requesting that the defendant be released on home confinement with electronic monitoring in Albion or alternatively in Mount Vernon, where she was visiting. Defense counsel stated that the defendant needed to return to work and take care of her dog. Defense counsel said she was not a danger to any person or the community and asked for her immediate release. Defense counsel asserted that "[t]he protected party is 16 and can presumably get help if there's any problem."

¶ 13   The State again provided the same factual proffer as at the initial detention hearing, including additional details. The State said that in addition to Deputy McDaniels's testimony, Elizabeth Heiken would testify that she was a resident at the home where Brody was playing in the yard with her son. When the children observed the defendant walking onto the property, they both ran inside, and then the defendant "knocked on the door several times and told [Elizabeth] to open the door or she was going to call the cops." The defendant eventually left, but returned later when she was in the passenger seat of a truck, yelling at Brody when she passed by the residence where he was in the yard. The State proffered that the allegations in the OP were the "exact same conduct" that occurred on April 25, 2026, in that the defendant harassed her son and even concealed him from his father at some point.[1] The defendant was on conditional discharge for two violations of OPs when the offense occurred, as well as conditional discharge for retail theft. The State argued that the defendant posed a real and present threat to the safety of the protected party due to her conduct in violation of the OP.

---

[1]The charging instrument and prior court testimony stated that the offense occurred on April 27, 2026.

¶ 14    The trial court stated the factors it considered in the defendant's favor, including her community ties and employment. There were no weapons used in the offense and no injuries other than "harassment and probably fear." However, the defendant's criminal history included a pending case, failures to appear, and that she was on bond and conditional discharge when the offense occurred. She had two prior cases of violating orders of protection. The trial court denied the motion for relief. The defendant appealed.

¶ 15                                    II. ANALYSIS

¶ 16    On appeal, the defendant argues that the pretrial detention order should be vacated because the State failed to prove that the defendant posed a real and present threat to anyone that could not be mitigated by conditions of release, and the State did not argue or prove that the defendant posed a flight risk that could not be mitigated by conditions, and the trial court imposed the wrong standard. The defendant does not challenge the fact that the State proved, by clear and convincing evidence, that the proof is evident or the presumption is great that the defendant committed a qualifying offense. This issue has thus been abandoned on appeal. See *People v. Drew*, 2024 IL App (5th) 240697, ¶ 21; Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024) ("If a memorandum is filed, it must identify which issues from the motion for relief are being advanced on appeal.").

¶ 17    Pretrial release—including the conditions related thereto—is governed by article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2024)), as amended by Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act. A defendant's pretrial release may be denied only in certain statutorily limited situations. 725 ILCS 5/110-6.1 (West 2024). Upon filing a timely, verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed a qualifying offense, that the defendant's

6

pretrial release poses a real and present threat to the safety of any person or the community or poses a flight risk, and that less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution. *Id.* § 110-6.1(e), (f). The State or the defendant may present evidence to the trial court by way of proffer based upon reliable information. *Id.* § 110-6.1(f)(2). The trial court may order a defendant detained pending trial if the defendant is charged with a qualifying offense and the trial court concludes the defendant poses a real and present threat to the safety of any person or the community (*id.* § 110-6.1(a)(1)-(7)) or there is a high likelihood of willful flight to avoid prosecution (*id.* § 110-6.1(a)(8)).

¶ 18    Where the parties to a pretrial detention hearing proceed solely by proffer or submission of documentary evidence, this court stands in the same position as the trial court and may conduct its own independent review of the proffered evidence, thus reviewing the record *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 54. In the present matter, the parties proceeded solely by proffer, so we will employ a *de novo* review.

¶ 19    The trial court is provided a nonexhaustive list of factors it should consider when determining whether a defendant poses a real and present threat to the safety of any individual(s) or the community. Those factors include (1) the nature and circumstances of the offenses charged, including whether they are crimes of violence, involve a weapon, or a sex offense; (2) whether the defendant's prior criminal history indicates "violent, abusive, or assaultive behavior, or lack of such behavior"; (3) the identity of any individual to whose safety the defendant may pose a threat and the nature of any such threat; (4) the defendant's age and physical condition; (5) the age and physical condition of the victim or complaining witness; (6) whether the defendant possesses or has access to any weapons; (7) whether the defendant was on probation, parole, or mandatory

7

supervised release when arrested on the underlying charges or any other offense; and (8) any other factor that has a reasonable bearing on the defendant's propensity for violent, abusive, or assaultive behavior. 725 ILCS 5/110-6.1(g)(1)-(9) (West 2024). No one factor is determinative, and the court must base its decision on an individualized assessment. *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 15 (citing 725 ILCS 5/110-6.1(f)(7) (West 2022)).

¶ 20 Once a court determines that the defendant poses a threat to the safety of any individual or the community, the trial court must determine whether the State has met its burden of proving by clear and convincing evidence what pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." 725 ILCS 5/110-5(a) (West 2024). In reaching its determination, the trial court must consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant;[2] (4) the nature and seriousness of the specific, real, and present threat to any person that would be posed by the defendant's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. *Id.* § 110-5(a)(1)-(5). The Code lists no singular factor as dispositive. See *id.* § 110-5(a). The nature and circumstances of the underlying offense is "just one factor to consider in determining whether the threat posed can be mitigated by conditions of release." *People v. Lopez*, 2025 IL App (2d) 240709, ¶ 19.

---

[2]The defendant's history and characteristics include: "the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past relating to drug or alcohol abuse, conduct, *** criminal history, and record concerning appearance at court proceedings," as well as "whether, at the time of the current offense or arrest, the defendant was on probation, parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal law, or the law of this or any other state." *Id.* § 110-5(a)(3)(A), (B).

¶ 21    On appeal, the defendant argues in part that the trial court used the incorrect standards when evaluating whether she posed a real and present threat. Specifically, the trial court found that the defendant posed a "clear and present possible threat" and that no conditions "would assure" that the defendant would abide by court orders. As previously stated, our standard of review in this case is *de novo*, meaning this court performs the same analysis a trial court would, and we owe no deference to the trial court. *People v. Avdic*, 2023 IL App (1st) 210848, ¶ 25. As such, we have conducted our own review of the evidence and do not rely upon the language used by the trial court.

¶ 22    The defendant argues that she did not pose a real and present threat to Brody or anyone else in that the State did not proffer any evidence that the defendant threatened anyone or had a history of violence. The defendant also did not previously violate this OP, and the allegations "do not show a calculated violation of the order." The defendant argues that "[a]lthough her subsequent actions of entering the yard, knocking on the door, and driving by later and yelling were all inappropriate, nothing about these actions shows that she poses a real and present threat to [Brody's] safety." We are not persuaded by this argument.

¶ 23    The OP was entered in October 2024, with an effective date through October 2026. The underlying OP indicated that there were "numerous incidents of harassment" that led to the OP, including Brody being concealed from Jesse. When the defendant saw Brody in the yard of a residence, instead of abiding by the OP, she approached Brody and came onto the property. After Brody ran inside the house, the defendant followed him, began knocking on the door several times, and told Elizabeth to open the door or she was going to call the cops. Her interaction did not stop there, as she later returned to the residence, where she knew Brody had been earlier that day, and yelled at Brody while she was the passenger in a truck. The defendant argues that her actions did

9

not pose a real and present threat to Brody's safety, but violating an OP against a minor child when the OP was originally obtained due to numerous incidents of harassment puts the protected party at risk of the very behavior the OP was ordered to prevent. The State also presented the defendant's criminal history, which included two violations of OPs, and the defendant was on conditional discharge for those violations when the present offense occurred.

¶ 24 These factors show, by clear and convincing evidence, that the defendant posed a real and present threat to Brody. While it may have been a coincidence that the defendant saw Brody in the yard, the remainder of her actions include attempting to follow Brody into a home, knocking on the door, and threatening to call law enforcement. The defendant then drove by the residence again later to yell at him. The defendant's behavior, along with her criminal history of violating OPs, shows that she posed a real and present threat to Brody.

¶ 25 The defendant also argues that conditions, such as home confinement and electronic monitoring, would have been sufficient to mitigate any threat she posed. We do not agree. At the time of the offense, the defendant was already on conditional release for two prior violations of OP convictions. This resulted in a court order that the defendant not violate any laws, and her violation of the present OP showed the defendant would not comply with any conditions of her release. Further, the defendant was charged with the same behavior that necessitated the OP initially, thereby demonstrating that she continued to engage in court-prohibited behavior. As such, there are no conditions or combination of conditions that would mitigate the defendant's threat to Brody.

¶ 26 In addition to her foregoing arguments, the defendant argues that the State failed to show by clear and convincing evidence that the defendant had a high likelihood of willful flight to avoid prosecution. To fully review this claim, we must first address the State's verified petition to deny

pretrial release. The petition stated that the defendant was charged with a violation of an order of protection and that her release posed a real and present threat to the safety of any person or persons or the community. 725 ILCS 5/110-6.1(a)(3) (West 2024). The verified petition, however, did *not* allege that the defendant had a high likelihood of willful flight. *Id.* § 110-6.1(a)(8).

¶ 27    Looking to the plain language of section 110-6.1(d)(1), the Code states:

"The petition shall be verified by the State and *shall state the grounds* upon which it contends the defendant should be denied pretrial release, including the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts or flight risk, as appropriate." (Emphasis added.) *Id.* § 110-6.1(d)(1).

Our primary objective when construing a statute is to give effect to the legislature's intent, best determined by giving the statutory language its plain and ordinary meaning. *People v. Hunt*, 234 Ill. 2d 49, 59 (2009). The word "shall" has been construed as a clear expression of legislative intent to impose a mandatory obligation. *People v. O'Brien*, 197 Ill. 2d 88, 93 (2001). The language of the Code thus requires that the verified petition state the grounds upon which the defendant shall be denied pretrial release. *People v. Craig*, 2026 IL App (5th) 250867, ¶ 46.

¶ 28    In the present case, the verified petition does not allege that the defendant should be denied pretrial release because the defendant was a flight risk. The petition only alleges that the defendant posed a real and present threat as the basis for denial of pretrial release. As such, the trial court erred in considering any factors related to the defendant's detention based on her being a flight risk.

11

¶ 29                                    III. CONCLUSION

¶ 30    We affirm the trial court of Jefferson County's orders detaining the defendant based on her

real and present threat, and that no conditions would mitigate the risk posed by the defendant. We

vacate the portion of the orders detaining the defendant based on the willful flight standard.

¶ 31    Affirmed in part and vacated in part.